**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Integrity Advance, LLC**<br>c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>and<br><br>**James R. Carnes,**<br>c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>       Plaintiffs,<br><br>v.<br><br>**Consumer Financial Protection Bureau,**<br>1700 G Street NW<br>Washington, DC 20004<br><br>       Defendant. | Civil Action No. _____ |

**COMPLAINT**

Plaintiffs Integrity Advance, LLC ("Integrity Advance") and James R. Carnes ("Carnes") (collectively "Plaintiffs"), by and through their undersigned counsel, file this complaint against the United States Consumer Financial Protection Bureau ("CFPB" or "Bureau") and allege the following:

**INTRODUCTION**

1.      Plaintiffs bring this action seeking injunctive and declaratory relief arising out of the CFPB's retroactive and unconstitutional assertion of authority over Plaintiffs in an

administrative adjudication designated *In the Matter of Integrity Advance, LLC and James R. Carnes*, 2015-CFPB-0029 (filed Nov. 18, 2015).

2.      In its administrative action, the Bureau alleges, among other things, that Plaintiffs violated Section 1036 of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5536 through alleged violations of the federal consumer financial laws, including section 1031 of the CFPA, 12 U.S.C. § 5531, which prohibits unfair, deceptive or abusive acts or practices (UDAAP).

3.      The Bureau can only pursue CFPA claims, as allowed under sections 1031 and 1036 of the CFPA, against entities or individuals that are "covered persons" within the meaning of the statute.  A "covered person" is any entity or person "that engages in offering or providing a consumer financial product or service."  *See* 12 U.S.C. § 5481(6)(A).

4.      Plaintiffs Integrity Advance, which formerly offered short-term, small-dollar loans to consumers, and its CEO and President Plaintiff Carnes stopped offering or providing any consumer financial product or service before the Bureau had authority to pursue claims under the CFPA as to Plaintiffs.

5.      Under the CFPA, certain – but not all – pre-existing consumer financial protection authorities transferred to the Bureau from other prudential regulators on July 21, 2011 (the "transfer date," and also the "effective date").  In particular, this "transfer authority" was limited in scope to "all powers and duties that were vested in the [federal banking regulators]."

6.      Plaintiffs are nonbanks that were not covered by the "transfer authority" that transferred to the Bureau on July 21, 2011.

7.      This "transfer authority" did not include authority over *non*bank "covered persons" within the meaning of the CFPA.

8.      Under the Congressional framing of the CFPA, certain "newly-created" authority

could *only* be assumed and exercised by the Bureau's first lawfully-appointed Director.  This

"newly-created" authority includes the CFPB's ability to prohibit unfair, deceptive, or abusive

acts or practices under the CFPA, 12 U.S.C. § 5531, 5563(a)(1)(B); and to pursue claims against

nonbank "covered persons" that were not previously subject to the authority of the federal

banking regulators.

9.      All of the Bureau's powers are concentrated within the hands of a single Director,

who is appointed by the President, subject to the advice and consent of the Senate, to serve for a

five-year term.  On January 4, 2012, during a Congressional recess, the President appointed the

Bureau's current and first-ever Director, Richard Cordray; other appointments on the same day

and in the same manner were subsequently found to be unlawful.[1]  On July 16, 2013, the Senate

confirmed the President's appointment of Mr. Cordray.

10.     Upon the Senate's confirmation of Mr. Cordray on July 16, 2013, the CFPB's

"newly-created" authority, including the authority to take enforcement actions against nonbank

"covered persons" for violations of the Bureau's UDAAP authority and other federal consumer

financial laws vested.

11.     Here, when the Bureau's "newly created" authority vested on July 16, 2013, the

Bureau lacked authority under the CFPA, including any UDAAP authority as to Plaintiffs. In

July 2013 Plaintiffs were not engaging in the offering or provision of a consumer financial

---

[1] In July 2014, the Supreme Court held that the recess appointments of three members of the
National Labor Relations Board ("NLRB"), appointed on the same day as Mr. Cordray, were
unconstitutional because the Senate was not in recess.  *NLRB v. Noel Canning*, 134 S. Ct. 2550,
2556-57, 2577-78 (2014).  Applying the Court's holding, by the identical facts and reasoning,
Mr. Cordray's recess appointment was also unconstitutional.

product or service, and were not "covered persons," within the meaning of the CFPA claim.  *See* 12 U.S.C. §§ 5531, 5536.

12.     Plaintiffs also never engaged in any other conduct – at any time – as to which the Bureau could enforce one or more federal consumer financial laws.

13.     Because Plaintiffs never fell within the Bureau's authority under the CFPA, Plaintiffs ask this Court to temporarily restrain, and preliminarily and permanently enjoin the CFPB from pursuing its claims under the CFPA against Plaintiffs, and to issue a declaratory judgment that the Bureau does not have authority to pursue its CFPA claims against Plaintiffs.

## THE PARTIES

14.     Integrity Advance is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business in Wilmington, Delaware.

15.     James R. Carnes is a natural person, citizen of the State of Kansas, and has a business address in Wilmington, Delaware.

16.     The Consumer Financial Protection Bureau is an agency of the United States government charged with regulating consumer protection as it relates to financial products and services.  Defendant's business address is located at 1700 G Street N.W., Washington, DC, 20552.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1346, 1651, 2201 and 5 U.S.C. § 702 and 706.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).

18.     This Court should exercise jurisdiction over Plaintiffs' claims because the CFPA does not provide a "statutory scheme" that displays a "fairly discernible" Congressional intent to limit this Court's jurisdiction.  *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010).

19.     Further, there would be a presumption against any implied intent to limit the jurisdiction of the court because (a) without judicial review at this stage, meaningful judicial review will be foreclosed; (b) Plaintiffs' claims are wholly collateral to the review provisions of the CFPA; and (c) Plaintiffs' claims are not within the particular expertise of the Bureau.

20.     Finally, it is plainly futile to force Plaintiffs to exhaust any remaining administrative remedies.

## FACTUAL ALLEGATIONS

### Background of Integrity Advance

21.     Integrity Advance, LLC was formerly a nonbank short-term, small-dollar lender; James R. Carnes was the CEO and president of Integrity Advance.

22.     Integrity Advance was licensed by the Delaware Office of the State Bank Commissioner from 2008 to 2013.

23.     Between May 2008 and December 2012, Integrity Advance offered short-term, small-dollar loans to consumers, which ranged in value from $100–$1000.

24.     Integrity Advance stopped offering loans to consumers in December 2012.

25.     Integrity Advance ceased all consumer operations in June 2013.

26.     Integrity Advance, as part of it wind-down process, returned its lenders license on June 10, 2013.

**Background of the Consumer Financial Protection Bureau**

27.     The CFPA establishes the CFPB as an independent executive agency within the Federal Reserve System.  12 U.S.C. § 5491 (2012).

28.     The Bureau opened its doors on July 21, 2011.  This date is referred to as the "transfer date," (the date on which certain pre-existing consumer financial protection laws transferred to the Bureau from other prudential regulators).  *See* 12 U.S.C. § 5582; *Designated Transfer Date*, 75 Fed. Reg. 57252 (Sept. 20, 2010).

29.     July 21, 2011 is also the "effective date" because it is the earliest date on which certain enforcement and other statutory provisions under the CFPA could take effect, provided certain statutory strictures are met.  *See* 12 U.S.C. § 5582; *Designated Transfer Date*, 75 Fed. Reg. 57252 (Sept. 20, 2010).

30.     Congress bifurcated the authorities of the Bureau.  First, "transfer" authorities – authorities transferred to the CFPB from the federal banking (or prudential) regulators – vested in either the Director or the Secretary of the Treasury on July 21, 2011, 12 U.S.C. § 5586(a). The "transfer" authorities do not include the authority to enforce federal consumer financial laws as to nonbanks, such as Plaintiffs.  Second, "newly-created" authorities vested solely in the Director whenever he or she would be lawfully appointed and confirmed.

31.     The Bureau's powers are concentrated within the hands of a single Director, who is appointed by the President, subject to the advice and consent of the Senate, to serve for a five-year term.  12 C.F.R. § 5491(b).

32.     On January 4, 2012, the President appointed Richard Cordray to serve as Director of the Bureau during a Congressional recess, under the Recess Appointments Clause.  *See* U.S. Const. art. II, § 2, cl. 3.

33.     On January 24, 2013, the President nominated Mr. Cordray as Director under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2.

34.     On July 16, 2013, the United States Senate confirmed Mr. Cordray to serve as Director of the Bureau for a five-year term.

35.     In July 2014, the Supreme Court held that the recess appointments of three members of the National Labor Relations Board ("NLRB"), purportedly appointed on the same day as Mr. Cordray, were unconstitutional because the Senate was not in recess.  *NLRB v. Noel Canning*, 134 S. Ct. 2550, 2556–57, 2577–78 (2014).  The Court's holding necessarily applies to the Director's appointment, as well, as that case involves the same facts, and, thus, reasoning.

## Background of the Administrative Adjudication

36.     The Bureau issued a civil investigative demand ("CID") to Integrity Advance on January 7, 2013.

37.     The Bureau filed a Notice of Charges in its administrative forum against Plaintiffs on November 18, 2015.

38.     Plaintiffs filed an Answer on December 9, 2015 – as required under the CFPB's Rules of Practice for Adjudication Proceedings.  12 C.F.R. § 1081.201(a) ("Within 14 days of service of the notice of charges, respondent shall file an answer as designated in the notice of charges.")

39.     Plaintiffs filed a Motion to Dismiss on December 21, 2015.  The Bureau filed its Opposition on January 1, 2016, and Plaintiffs filed their Reply on January 25, 2016.  The Rules of Practice further require a disposition of any motion to dismiss within 30 days from when a reply brief is filed.

40.     The Administrative Law Judge assigned to the adjudication ("Hearing Officer") granted oral argument on Plaintiffs' motion to dismiss on February 22, 2016, and heard oral argument on April 5, 2016.

41.     The Hearing Officer denied Plaintiffs' Motion to Dismiss on April 22, 2016.

## The CFPA Is Retroactively Applied To Plaintiffs

42.     The Appointments Clause and Supreme Court precedent show that Executive authority can only be delegated to an Officer of the United States.

43.     The Appointments Clause provides important protections to the process of creating Officers of the United States.

44.     This Constitutional framework is also inherent to the CFPA, which provides that "there is established the position of the Director, who shall serve as the head of the Bureau," and that the Director shall "be appointed by the President with the advice and consent of the Senate." 12 U.S.C. § 5491(b)(1)(2).

45.     Congress, in Subtitle F and Section 1066 of the CFPA, contemplated bifurcated Bureau authority.  Section 1066 specifically states that "[t]he Secretary [of the Treasury] is authorized to perform the functions of the Bureau under this subtitle until the Director of the Bureau is confirmed by the Senate in accordance with section 1011."  12 U.S.C. § 5586(a). Subtitle F and Section 1066 include only "transfer authority," and not "newly-created" authority under the CFPA, which is applicable to nonbanks.

46.     "Transfer authority" includes among other things "all powers and duties that were vested in the [federal banking regulators]," and includes:

- All consumer financial protection functions of the Federal Reserve Board of Governors.  12 U.S.C. § 5581(b)(1).

- All consumer financial protection functions of the Comptroller of the Currency. 12 U.S.C. § 5581(b)(2).

- All consumer financial protection functions of the Director of the Office of Thrift Supervision.  12 U.S.C. § 5581(b)(3).

- All consumer financial protection functions of the Federal Deposit Insurance Corporation.  12 U.S.C. § 5581(b)(4).

- All consumer financial protection functions of the National Credit Union Administration.  12 U.S.C. § 5581(b)(6).

47.    The Bureau's "newly-created authority" includes:

- The CFPB's ability to prohibit unfair, deceptive, or abusive acts or practices under the CFPA, 12 U.S.C. § 5531, 5563(a)(1)(B); and

- As to "covered persons" not previously subject to FRB, OCC, OTS, FDIC, NCUA (the agencies referenced above), the CFPB's ability to take enforcement actions for violations of a Federal consumer financial law.

48.    The limited nature of the Bureau's "transfer authority" is explained in a January 10, 2011 letter jointly submitted by the Department of Treasury Inspector General and Federal Reserve Board ("Federal Reserve") Inspector General in response to a Congressional inquiry about the operations of the Bureau, as contemplated by the CFPA.[2]  The letter explains that in

---

[2] Letter, Joint Response by the Inspectors General of the Department of the Treasury and Board of Governors of the Federal Reserve System: Request for Information Regarding the Bureau of Consumer Financial Protection (Jan. 10, 2011) ("According to the text of the Dodd-Frank Act, the Secretary's authority under section 1066(a) does not extend to [the Bureau's] newly-established authorities.").

the absence of a lawfully-appointed Director, the Bureau, in pertinent part, only had the authority

to:

> **[P]rescribe rules, issue orders, and produce guidance** related to the federal consumer financial laws that were, prior to the designated transfer date [July 21, 2011] within the authority of the [Federal Reserve] Board, the Office of the Comptroller of the Currency, the Office of Thrift Supervision, the Federal Deposit Insurance Corporation, and the National Credit Union Administration [the federal banking regulators]." (Emphasis added).

49.     This explanation was reiterated by the OIGs in a report on the CFPB's

activities.[3]

50.     Under Constitutional principles and the Congressional framing of the CFPB's

authority in the CFPA, "newly-created" authority could only be assumed and exercised by the

Bureau's first lawfully-appointed Director.

51.     Since the first Director of the CFPB was not confirmed until July 16, 2013, the

Bureau did not assume its "newly-created" enforcement authority as to nonbanks until that time.

52.     The Bureau's authority to pursue a CFPA claim as to nonbanks may not be

retroactively applied (including through ratification) to entities that were not "covered persons"

on or after July 16, 2013.

53.     By pursing an action against Plaintiffs for alleged violations of the CFPA that

occurred before July 16, 2013, the Bureau has and continues to undermine core principles of due

process.  In short, the Bureau seeks to apply CFPA claims to actors over that have never been

within that statute's jurisdiction.  This contradicts well-established principles that counsel against

the retroactive application of the law.

---

[3] Offices of Inspector General, OIG-11-088, *Review of CFPB Implementation Planning Activities* 4 (2011).

## Jurisdiction and Futility of Exhaustion of Remedies

54.     Congress did not provide a statutory scheme of administrative and judicial review in the CFPA.  Thus, there is no "fairly discernible" Congressional intent to limit jurisdiction away from district courts.  *Free Enter. Fund*, 561 U.S. at 489 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994)).

55.     Even if such a "fairly discernable" scheme could be found, it is appropriate and necessary for this Court to exercise jurisdiction here before adjudication of the merits of the Bureau's claims in the administrative proceeding because (i) without judicial review at this stage all meaningful judicial review will be foreclosed; (ii) Plaintiffs' claims are wholly collateral to the review provisions of the CFPA; and (iii) Plaintiffs' claims are outside the experience of the CFPB.

56.     Moreover, it is plainly futile to force Plaintiffs to exhaust their administrative remedies by continuing to defend against CFPA claims that the CFPB does not have authority to pursue.  The Bureau, in bringing the administrative action, has asserted jurisdiction and authority, which has not been curtailed by the Hearing Officer.  The Bureau is substantially unlikely to find now, or later on in the proceeding, that it, in fact, does not have authority to pursue its CFPA claims as to Plaintiffs.

## The Continued Prosecution Of The CFPA Claims Will Cause Plaintiffs Irreparable Harm

57.     Absent injunctive relief from this Court, Plaintiffs will be forced to continue to litigate CFPA claims that arise from conduct that occurred before that statute was effective as to Plaintiffs, which are nonbanks.  This constitutional violation, standing alone, constitutes irreparable injury.

58.     Even if Plaintiffs prevail on the underlying merits of the administrative adjudication, they will still have suffered irreparable harm by having been forced to litigate claims arising from the retroactive application of the CFPA.

59.     Moreover, under the Bureau's rules, there is no automatic stay of any sanctions imposed by the Bureau pending appeal to a federal circuit court of appeals.  Thus, the availability of an appeal after an administrative proceeding does not address this harm because the administratively-imposed sanction already may have taken effect – and the damage therefore already substantially and harmfully done – by the time the appellate court could rule.  *See* 12 C.F.R. 1081.407(e).

60.     Likewise, the harm threatened here cannot be remedied after the fact by money damages.  Governmental immunity doctrines substantially constrain Plaintiffs' ability to seek damages from the CFPB.

61.     By contrast, the CFPB will suffer no harm from a pause in an administrative proceeding against Plaintiffs pending final resolution of the constitutional issue presented here.

62.     Moreover, the last of the loans that are the subject of the Bureau's administrative enforcement action were made approximately three years ago, and Plaintiffs were in the midst of shutting down the business when the Bureau first started its investigation.  Integrity Advance, while not technically dissolved under state law, has not operated for nearly three years.  Therefore, no consumer would be adversely affected by the requested injunctive relief.

### COUNT ONE
### (Violation of the Plaintiffs' Due Process Rights)

63.     Plaintiffs adopt and incorporate by reference each of the preceding paragraphs of this Complaint as if set forth fully herein.

64.     Congress intentionally bifurcated the CFPB's authority such that certain "newly-created" authority could *only* be assumed and exercised by the Bureau's lawfully-appointed Director.  That "newly-created" authority forms the basis for the CFPB's CFPA claims against Plaintiffs.  This newly-created authority also includes the CFPB's ability to bring enforcement actions to prohibit unfair, deceptive, or abusive acts or practices under the CFPA, 12 U.S.C. § 5531, 5563(a)(1)(B); and to bring enforcement actions against "covered persons," which were not previously subject to the authority of the federal banking agencies, for violations of federal consumer financial laws.

65.     The Bureau's first-ever Director was not appointed and confirmed until July 16, 2013, and thus the "newly-created" authority under the CFPA did not vest in the Director until July 16, 2013.

66.     Plaintiffs ceased making loans to consumers in December 2012 and ceased all operations in June 2013, all before the "newly-created" authority under the CFPA vested in the Director.  Thus, the Bureau lacked authority over Plaintiffs.  Nonetheless, the Bureau initiated an administrative action against Plaintiffs which, by its very nature, represents an unconstitutional retroactive application of the law.

67.     By virtue of the Bureau's pursuit of CFPA claims that are only retroactive in nature, Plaintiffs have suffered and continue to suffer a legal wrong in the form of a deprivation of their right to due process of law guaranteed by the Fifth Amendment to the United States Constitution.

68.     Plaintiffs' due process rights will be irreparably harmed if a temporary restraining order does not issue to stay the Bureau from continuing to prosecute its CFPA claims as to Plaintiffs.

69.     Plaintiffs have a substantial likelihood of success on the merits of their claims under settled law.

70.     Plaintiffs will be irreparably injured without injunctive relief, as described above, and the harm to Plaintiffs if the temporary restraining order is not granted far outweighs any harm to the government if it is denied; indeed, the Bureau can show no harm resulting from enjoining the current proceedings.

71.     The grant of an injunction will not disserve the public interest, as it is in the public interest that the constitutional rights of all parties charged by any law enforcement agency, including the CFPB, be protected, that the CFPA not be applied retroactively in contravention of well-established principles, and that the appearance of fairness be preserved.

72.     Pursuant to the Court's Local Rules, Plaintiffs contemporaneously apply for a temporary restraining order and preliminary injunction by separate pleadings.

73.     Plaintiffs provided the Bureau with a copy of the complaint, motion for temporary restraining order and preliminary injunction, and memorandum of points and authorities prior to filing.

## COUNT TWO
## DECLARATORY JUDGMENT

74.     Plaintiffs adopt and incorporate by reference each of the preceding paragraphs of this Complaint as if set forth fully herein.

75.     This is a request for a declaratory judgment that the CFPB's administrative action against Plaintiffs is unconstitutional.

76.     The Constitution and separation of power doctrines require that executive authority be delegated to an Officer of the United States.  Absent a lawfully appointed Officer of the United States who can assume authority, such authority does not vest.  Because Plaintiffs

never fell within the Bureau's authority *after* it had vested on July 16, 2013 with the appointment of the first-ever Director, the administrative enforcement action against Plaintiffs represents an unconstitutional retroactive application of the law, and violates Plaintiffs' due process rights.

77.     By initiating and continuing to pursue its administrative action, the CFPB has asserted its authority and is substantially unlikely to find that it lacks authority now or at any stage of the administrative proceeding.

78.     Therefore, an actual and substantial controversy exists as to whether the CFPB has the authority to pursue its administrative action.  This case is within this Court's jurisdiction and the Court, upon the filing of this Complaint, may declare the rights and other legal relations of any interested party seeking such declaration, pursuant to 28 U.S.C. § 2201.

79.     To clarify and settle the legal relations at issue and afford the parties relief from the insecurity and uncertainty with respect to the rights and obligations of the parties, Plaintiffs are entitled to a declaratory judgment that (1) Plaintiffs never fell within the CFPA's jurisdiction; and (2) that the Bureau does not have authority to pursue any of its CFPA claims now pending in the administrative proceeding as to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court enter an order granting judgment in its favor and granting the following relief:

A.     Issue a temporary restraining order enjoining the Bureau, together with their officers, agents, servants, employees and attorneys, from prosecuting and pursuing the CFPA claims pending the administrative proceeding, referred to as 2015-CFPB-0029, against Plaintiffs or any other action against Plaintiffs until such time as this case is fully and finally resolved;

       B.       As soon as is practicable, hold a full hearing on the merits of Plaintiffs' request

for preliminary injunction;

       C.       Provide for preliminary and permanent injunctive relief;

       D.       Issue a declaratory judgment that the Bureau's assertion of adjudicative authority

over Plaintiffs is retroactive and unconstitutional and otherwise not in accordance with the CFPA

and in excess of that statute's authority;

       E.       An award of attorneys' fees and costs to Plaintiffs; and

       F.       Such other and further relief as the Court deems just and proper.


Dated: May 9, 2016                      Respectfully submitted,

                                              _____

                                              Allyson B. Baker (# 478073)
                                              Andrew T. Hernacki (# 1024442)
                                              Peter S. Frechette (*pro hac vice application forthcoming*)
                                              Christine E. White (*pro hac vice application forthcoming*)
                                              Venable LLP
                                              575 7th St. NW
                                              Washington, D.C. 20004
                                              202-344-4000 Telephone
                                              202-344-8300 Facsimile
                                              abbaker@venable.com

                                              *Counsel for Integrity Advance, LLC and James R. Carnes*